# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0828V

| | |
|---|---|
| EVELYN ASHFORD,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: August 19, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Joseph Douglas Leavitt, U.S. Department of Justice, Washington, DC, for Respondent.*

### ENTITLEMENT DECISION[1]

On February 1, 2021, Evelyn Ashford filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving a tetanus diphtheria ("Td") vaccine on November 22, 2020. Amended Petition at 1, ¶ 1, 12.

However, the record in this case contains insufficient evidence to establish the pain onset within the timeframe required for a Table SIRVA, or even to support any causal link

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner filed an amended petition on December 15, 2022, providing additional detail and medical record citations, and correcting stating the exact vaccine she received. ECF No. 28.

between Petitioner's right shoulder pain and the vaccination she received. *See* 42 C.F.R. § 100.3(a)XIV(B) & (c)(10)((ii) (2017) (requiring pain onset within 48 hours of vaccination); *Althen v. Sec'y of Health & Hum. Servs.,* 418 F.3d 1274, 1278 (Fed. Cir. 2005) (three-pronged test for actual causation). And despite due opportunity, Petitioner has not provided the preponderant evidence needed to overcome these deficiencies. I therefore DENY entitlement in this case, and the matter is dismissed.

## I.     Relevant Procedural History

Ms. Ashford initially filed only a cursory petition in this case, lacking a detailed discussion of her injury or the accompanying affidavit and medical records required by the Vaccine Act. *See* Section 11(c). Almost two years later, she filed her vaccine record, medical records from her primary care provider ("PCP") and orthopedist, and an electronically-signed declaration[4] addressing the lack of a prior civil award. Exs. 1-4, filed Dec. 15, 2022, ECF No. 18. In an accompanying motion (aimed at obtaining a finding that the pre-assignment review ("PAR") requirements had been met), Petitioner acknowledged the rushed filing of her petition in early 2021 (occasioned by the then-proposed removal of SIRVA from the Vaccine Injury Table).[5] Motion for Appropriate Relief, filed Dec. 15, 2022 (ECF No. 20). I subsequently noted all deficiencies in Petitioner's filings, including the need for a *physical* signature on her declaration. Order, issued Feb. 9, 2023, ECF No. 21.

Eight months later (and more than 30 months after the case was initiated), Petitioner filed additional medical records (most already provided in Exhibits 1-3), a more detailed signed declaration,[6] and a list of her medical providers. Exs. 4-8, filed Aug. 23, 2023, ECF No. 25; PAR Medical History Questionnaire, ECF No. 26. The following day, she provided a more detailed petition with the appropriate medical records citations. ECF No. 28. On August 28, 2023, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 29.

On March 28, 2024, Respondent filed his Rule 4(c) Report, opposing compensation. ECF No. 35. Emphasizing "the apparent conflict between [P]etitioner's

---

[4] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 1.

[5] On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

[6] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 4.

initial explanation regarding her onset of pain and her explanation provided after litigation had begun" (*id.* at 7), Respondent maintained that "[P]etitioner has not provided preponderant evidence that the onset of her alleged right shoulder pain occurred within forty-eight hours of her November 22, 2020 Tdap vaccination" (*id.* at 8). He also insisted that Petitioner could not satisfy the Table SIRVA criterion regarding the location of her symptoms because "her medical records repeatedly describe symptoms outside of her shoulder." *Id.* at 8. And he questioned whether there are additional medical records, not yet filed, specifically those related to Petitioner's neck and cervical issues. *Id.* at 5 n.2, 6 n.4. Based upon these deficiencies, Respondent asked that I dismiss Petitioner's claim. *Id.* at 10.

On November 15, 2024, a call was held with the parties to discuss Respondent's objections. I noted my plan to issue this Order to Show Cause, and Petitioner was encouraged to dismiss her claim or file any additional evidence while awaiting my subsequent order. I issued the Order, allowing Petitioner a final chance to obtain and file the evidence needed to support her allegations, on May 15, 2025. ECF No. 36.

In her response, filed on August 15, 2025, Petitioner stated that "[n]o additional records are available or will be filed in this case." Petitioner's Response to the Order to Show Cause and Motion for a Ruling on the Current Record, filed Aug. 15, 2025, ECF No. 38. Emphasizing the "great disruption in the ordinary process of filing SIRVA cases" caused by the Secretary's previously-proposed removal of SIRVA from the Table, counsel's diligent efforts to provide all required medical records thereafter, and the evidence provided by her 2023 sign declaration, she requested that I "issue a ruling on entitlement based on the current record." *Id.* at 2-3. The matter is now ripe for adjudication.

## II. Applicable Legal Standards

Under Section 13(a)(1)(A) of the Act, a petitioner must demonstrate, by a preponderance of the evidence, that all requirements for a petition set forth in section 11(c)(1) have been satisfied. A petitioner may prevail on her claim if the vaccinee for whom she seeks compensation has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). According to the most recent version of the Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The specific criteria establishing a SIRVA are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the

upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic     studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (additional requirements set forth in the *Qualifications and Aids to Interpretations* ("QAI")). If a petitioner establishes that the vaccinee has suffered a "Table Injury," causation is presumed.

If, however, the vaccinee suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, petitioner must prove that the administered vaccine caused injury to receive Program compensation on behalf of the vaccinee. Section 11(c)(1)(C)(ii) and (iii). In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove her claim by preponderant evidence. Section 13(a)(1)(A). This standard is "one of . . . simple preponderance, or 'more probable than not' causation." *Althen*, 418 F.3d at 1279-80 (referencing *Hellebrand v. Sec'y of Health & Hum. Servs.*, 999 F.2d 1565, 1572-73 (Fed. Cir. 1993). The Federal Circuit has held that to establish an off-Table injury, petitioners must "prove . . . that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Hum. Servs.*, 165 F.3d 1344, 1351 (Fed.

Cir 1999). *Id.* at 1352. The received vaccine, however, need not be the predominant cause of the injury. *Id.* at 1351.

The Federal Circuit has indicated that petitioners "must show 'a medical theory causally connecting the vaccination and the injury'" to establish that the vaccine was a substantial factor in bringing about the injury. *Shyface*, 165 F.3d at 1352-53 (quoting *Grant v. Sec'y of Health & Hum. Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)). The Circuit adds that "[t]here must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* The Federal Circuit subsequently reiterated these requirements in its *Althen* decision. *See* 418 F.3d at 1278. *Althen* requires a petitioner

> to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Id.* All three prongs of *Althen* must be satisfied. *Id.*

Finding a petitioner is entitled to compensation must not be "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Further, contemporaneous medical records are presumed to be accurate and complete in their recording of all relevant information as to petitioner's medical issues. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993, F.2d 1525, 1528 (Fed. Cir. 1993). Testimony offered after the events in questions is considered less reliable than contemporaneous reports because the need for accurate explanation of symptoms is more immediate. *Reusser v. Sec'y of Health & Hum. Servs.*, 28 Fed. Cl. 516, 523 (1993).

### III.    Relevant Factual History

There are no medical record entries showing Petitioner ever complained of *right* shoulder pain prior to vaccination, but she received treatment for *left* shoulder pain in

2017 and 2019.[7] She also underwent surgery on her left ankle in late 2020.[8] Four days after this event, on November 22, 2020, Petitioner (age 50) received the Td vaccine in question intramuscularly in her right deltoid at a CVS pharmacy. Ex. 1 at 7.

Petitioner first mentioned right shoulder pain while discussing her overall health during a physical several weeks later, on December 11, 2020. Ex. 3 at 6. She did not, however, mention the Td vaccine she had received, or provide any details regarding her pain onset or possible cause. *Id.* Upon examination, her primary care provider ("PCP") observed "mild posterior scapular tenderness[9] and normal ROM[10] and strength, [and] no joint enlargement or tenderness." Ex. 3 at 9. Although he did not provide any opinion on the source of Petitioner's pain, the PCP prescribed Voltaren gel, presumedly for this condition. *Id.* at 10. It was noted that Petitioner also received a shingles vaccine during the visit - administered intramuscularly in her left deltoid - and had received an influenza vaccine "elsewhere on 09/10/2020." *Id.* at 12.

During the subsequent week, Petitioner attended physical therapy ("PT") sessions for her left foot. Ex. 2 at 74-78. There is no mention of right shoulder pain in the records from these sessions. *Id.*

On December 21, 2020, Petitioner (noted to be left-handed) sought orthopedic care for right shoulder and upper and lower arm pain. Ex. 2 at 61. Estimating her current pain level as eight out of ten, she reported a pain onset of December 3, 2020, after she lifted a "heavy potted plant" that she had decorated with Christmas ornaments. *Id.* Petitioner also described an increase in her right shoulder pain "after doing a lot of gardening." *Id.* The record contained a brief mention of the treatment Petitioner previously received for "*left* shoulder rotator cuff partial tear." *Id.* (emphasis added).

After reviewing x-rays taken that day and observing limited active and passive ROM, "no pain over [the] AC joint or bicipital groove, . . . [and] positive tenderness in the

---

[7] Orthopedic records show Petitioner received a steroid injection, underwent a left shoulder MRI, and discussed the possibility of shoulder surgery in 2017. Ex. 2 at 66-67, 70-71 (record dated 11/27/2017). PCP records from 2019, reference Petitioner's left shoulder pain, noting that she was receiving orthopedic care. Ex. 3 at 37-43 (record dated 12/6/2019).

[8] In the medical record from this PCP visit, Petitioner was described as wearing a boot on her left foot following surgery. Ex. 3 at 13 (record dated 11/18/2020).

[9] The scapula is "the flat, triangular bone in the back of the shoulder, articulating with the ipsilateral clavicle and humerus, called also *shoulder blade.* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("Dorland's") at 1673 (32th ed. 2012).

[10] ROM stands for "range of motion." MEDICAL ABBREVIATIONS at 38 (16th ed. 2020).

mid body of the right rhomboid,[11]" the orthopedist diagnosed Petitioner with adhesive capsulitis and rhomboid strain. Ex. 2 at 62. Although the orthopedist offered to administer an intra-articular injection, Petitioner expressed her preference for a trigger point injection into the rhomboid area as she characterized it "is the more tender area." *Id.* After administering this injection, the orthopedist instructed Petitioner to rest and ice her shoulder for 24 hours and provided her with a prescription for PT. *Id.*

Petitioner attended three more PT session for her left foot in December 2020. Ex. 2 at 81-86. At her next PT session on January 8, 2021, she requested a right shoulder assessment. *Id.* at 87. The therapist observed "limited mobility likely secondary to muscular strain," and no evidence of rotator cuff pathology. *Id.* at 90. She attended three additional PT session in January 2021, for her right shoulder pain. *Id.* at 93-101.

On January 25, 2021, Petitioner returned to the orthopedist for a follow-up appointment, reporting that the trigger point injection into her rhomboid "only provided temporary relief" and she was "now starting to experience radiating symptoms down the arm including numbness into the hand." Ex. 2 at 53. In this record, it was again noted that Petitioner's pain began on December 3, 2020, after lifting a heavy potted plant. *Id.* The orthopedist ordered an MRI and recommended that she undergo further assessment of her radiating symptoms. *Id.* at 55.

Performed on February 2, 2021, the MRI revealed findings that included mild inflammation of the subacromial/subdeltoid bursa and no evidence of a rotator cuff tear. Ex. 2 at 47.  On the MRI worksheet, Petitioner's symptoms were described as pain in the posterior joint to the elbow, some numbness and popping, and limited ROM. *Id.* at 107.

After attending several additional PT sessions in February (Ex. 2 at 2 at 111-16), Petitioner sought treatment from her PCP on February 16, 2021, for "diffuse lateral and posterior shoulder pain worse with any movement, . . . radiating down the back of the upper arm to the elbow" (Ex. 7 at 3). For the first time, she attributed her right shoulder pain to the Td vaccine she received in November 2020. Emphasizing Petitioner's very active use of her arms while working as a small animal surgeon, the PCP noted her shoulder had been "increasingly painful [the] last few days," resulting in her "crying after work d/t pain." *Id.* The medical record mistakenly states that Petitioner received a right shoulder joint steroid injection in addition to the trigger point injection received on December 21, 2020, but correctly recounts the February 2, 2021 MRI results. *Id.* at 3, 6; *see* Ex. 2 at 62 (record regarding injection). Reported as having an appointment already scheduled (*id.* at 3), Petitioner was instructed to see a neurologist, and an orthopedist if her pain worsened. *Id.* at 6.

---

[11] The major and minor rhomboid muscles extending over the seventh cervical vertebrae to the fifth thoracic vertebra. Dorland's at 1211-12.

On March 11, 2021, Petitioner returned to the orthopedist, complaining of right-sided neck, spine, and shoulder pain. Ex. 2 at 43. Characterized as sharp pain that began on January 18, 2021, she estimated its severity as seven out of ten. *Id.* This record does not include any information related to a diagnosis or prescribed treatment.

During multiple PT sessions in March and April 2021, Petitioner continued to show improvement, reporting pain primarily while performing tasks at work. Ex. 2 at 8-23, 25-27. Described as working in a lab (*id.* at 8), Petitioner reported "no major issues outside of work tasks" on March 18, 2021 (*id.* at 12).[12] She attributed improvements gained during PT sessions in April 2021, to a "shift to some focus on the neck" (*id.* at 18) and cervical spine (*id.* at 22), and "the inclusion of the cervical exercises" (*id.* at 26).

In the record from her next orthopedic appointment on May 3, 2021, the orthopedist noted that Petitioner had been treated for cervical radiculopathy by both his team and physician's assistant ("PA") Burke. Ex. 2 at 59. And an additional diagnosis of "[o]ther spondylosis with radiculopathy, cervical region" was added to prior diagnoses: adhesive capsulitis and right shoulder pain. *Id.* at 24. Petitioner reported that that her "tingling has diminished significantly but she is continued to note a stiffness sensation in her right shoulder." *Id.* at 59. After declining a steroid injection because she had recently received the COVID vaccine, Petitioner was told to continue her PT, and request a steroid injection in two to three weeks if her symptoms continued. *Id.* at 60.

At a PT session on May 14, 2021, Petitioner reported that she "[wa]s not getting any of the higher intensity pain." Ex. 2 at 28. At her next session on May 21, 2021, "she still note[d] some discomfort in the back of her shoulder blade that is painful with stiffness at times." *Id.* at 30.

Although Petitioner continued to mention her right shoulder pain during physicals attended in June and December 2021 (Ex. 7 at 9, 20), the last medical record related to treatment of her right shoulder pain is from an orthopedic visit on June 14, 2021. Ex. 6 at 28. Following examination that showed "full range of motion . . . [and] no pain over [the] AC joint or bicipital groove" and a review of the February 2021 MRI (*id.* at 29), the orthopedist opined that Petitioner "clearly has a component coming from her neck," adding that she "has had treatment with one of our neck specialist[s]." *Id.* at 30. Stating also that he thought "she has just some residual adhesive capsulitis at this time," he administered an intra-articular steroid injection. *Id.*

---

[12] For example, Petitioner reported difficulty lowering a crate holding an animal from a shelf to a table on March 23, 2021. Ex. 2 at 14.

8

In her declaration, signed on August 18, 2023, Petitioner insisted that her shoulder pain began when she received the Td vaccine, which was more painful, and administered higher, than other vaccines. Ex. 8 at ¶ 2. She acknowledged that she mentioned moving plants when asked for possible causes of her right shoulder pain, but claimed that activity occurred involved multiple plants, and occurred in October 2020, even earlier than her vaccination. *Id.* at ¶ 5. Stating that she informed her PCP and orthopedist about her belief that the Td vaccine caused shoulder pain in follow-up appointments, she averred "[b]oth doctors agreed with me" (*id.* at ¶ 6), and the spinal specialist, PA Burke ruled out any other cause for her pain (*id.* at ¶ 7).

### IV.    Analysis

All evidence from prior to the Petition's filing supports a pain onset beginning more than a week post-vaccination, and unrelated to the Td vaccine she received. Furthermore, in the histories provided when first seeking treatment, Petitioner identified December 3, 2020, as the date for her pain onset. And she theorized that her pain was due to her actions moving a potted plant, and thereafter exacerbated by tasks performed while gardening and at work. Petitioner also reported pain not near her shoulder joint, but rather over the shoulder blade and rhomboid muscle. Most importantly, she did not mention the Td vaccine as a potential cause of her pain until two weeks after this case was initiated.

Moreover, in January 2021, Petitioner began to experience additional symptoms – primarily pain radiating to her fingertips and in her neck - more likely related to her spine and neck. Several treating physicians noted the cervical nature of these symptoms, and referred Petitioner to an expert in this area for further assessment and treatment. And Petitioner showed greater symptom improvement in response to PT exercises focusing on her neck and spine.

Petitioner's later assertions related to onset and the supportive stances of her treating physicians run counter to the information contained in the contemporaneously-created medical records. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) (stating that medical records which are clear, consistent, and complete should be afforded substantial weight). They are not sufficient to counter the substantial evidence presented by the contemporaneously created medical records which supports a later pain onset, more likely attributable to muscle strain and cervical issues. Thus, Petitioner cannot prevail pursuant to either a Table or non-Table claim.

## Conclusion

To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence to support her allegation of a right shoulder injury that meets the definition for a Table SIRVA or was caused by the Td vaccine she received on November 22, 2020. Petitioner was informed that failure to provide preponderant evidence to support her claim would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for the claim, and she did not act to bulwark the claim despite due opportunity. Accordingly, entitlement cannot be preponderantly established, and this case is DISMISSED. The Clerk of Court shall enter judgment accordingly.[13]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.